Mark H. Jaffe (Bar No. 519494)
Frederic Jennings (Bar No. 519538)
Adam Elewa (Bar No. 519965)
Tor Ekeland, P.C.
195 Plymouth Street
5th Floor
Brooklyn, NY 11201
Tel: (718) 737-7264
Fax: (718) 504-5417
mark@torekeland.com
fred@torekeland.com
adam@torekeland.com

*Attorneys for Plaintiff*
*Mackenzie Architects, P.C.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

X_____X
:
MACKENZIE ARCHITECTS, P.C. :
:
Plaintiff, :
:
v. : Civil Action No. 1:15-CV-1105 (TFM)
: (DJS)
VLG REAL ESTATE DEVELOPERS, LLC; :
VICTOR GUSH; FGR ASSOCIATES, LLC; :
CAPTAINS LOOKOUT DEVELOPMENT, :
LLC; DESIGN LOGIC ARCHITECTS, PC; : MEMORANDUM OF LAW IN
CLARK REALTY, LCC; PAUL CLARK; : OPPOSITION TO DEFENDANTS'
FRANK TATE; and ROBERT BUCHER : MOTION ON THE PLEADINGS
: UNDER 12(C)
Defendants. :
:
X_____X

# Table of Contents

Statement of Facts .................................................................................................... 1

Argument ................................................................................................................ 2

    I.    On A Motion For a Judgment on the Pleadings, The Court Must Accept Plaintiff's Allegations as True and Plaintiff Is Not Required To Include Detailed Facts Such as Which Design Elements Were Copied ................................................................... 2

    II.    Courts May Not Consider Items Outside Plaintiff's Pleadings ................................... 3

    III.    The Designs Are Sufficiently Similar to Survive a Motion on The Pleadings ............. 3

    IV.    The Complaint Pleads Direct and Circumstantial Facts to Establish That All Defendants Had Access to Plaintiff's Designs ........................................................ 7

    V.    The Striking Similarity Between Mackenzie and Design Logic's Designs Lessens the Burden of Establishing Access ............................................................................ 9

    VI.    Any Alleged License Did Not Extend to The Defendants' Actions ........................... 10

    VII.    Plaintiffs Have Sufficiently Plead Contributory Infringement ................................... 17

    VII.    Plaintiff Has Sufficiently Plead Facts Supporting the Claim Defendants Removed Copyright Management Information from Mackenzie's Designs ...................................... 19

    IX.    Whether The Statute of Limitations Has Elapsed Is A Question of Material Fact That Cannot Be Dismissed on the Present Motion ................................................... 21

    X.    Whether Statutory Damages and Attorneys' Fees Are Available Is a Question of Material Fact That Can Not Be Dismissed on the Present Motion ................................. 23

    XI.    Plaintiff's Claims Are Not Objectively Unreasonable and Therefore Defendants Should Not Be Awarded Attorneys' Fees Even If They Prevail on the Merits ................. 24

<u>**Table of Authorities**</u>

**Cases**

*Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011) ..................................... 20

*Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68 (1980) .............. 22

*Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40 (2d Cir. 1991). .................................................. 3

*Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124  (S.D.N.Y. 2009* ........................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 29 S.Ct. 1937 (2009) ................................................................. 2

*Attia v. Soc'y of New York Hosp.*, 201 F.3d 50 (2d Cir. 1999) ...................................................... 4

*Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, No. 2:05- 711, 2007 WL 708798

    (E.D.N.Y. Mar. 6, 2007) ........................................................................................................... 4

*BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596 (S.D.N.Y. 2010) ........................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................... 2

C.A. Inc. v. Rocket Software, Inc*., 579 F. Supp. 2d 355 (E.D.N.Y. 2008)* ................................. 23

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006) .............................................................................. 3

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ............................................................................ 24

*Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424 (2d Cir. 2012) ........ 22

*Fox v. Hildebrand*, 2009 WL 1977996 (C.D. Cal. July 1, 2009) ................................................. 20

*Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526 (S.D.N.Y. 2007) ................................................... 8

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) ...................................................................... 22

*Hamil Am. Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) ...................................................................... 5

*Hanover Architectural Serv., P.A. v. Christian Testimony-Morris, N.P.*, No. 2:10-5455 KM

    SCM, 2015 WL 3462889 (D.N.J. May 18, 2015) ................................................................... 16

*HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380

    (S.D.N.Y. 2014) .................................................................................................................... 24

Huang v. Siam Commercial Bank Pub. Co., 247 Fed.Appx. 299 (2d Cir.2007) ........................ 22

*Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008).............. 4

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003) ................................................. 8, 9

*Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247 (S.D.N.Y. 2008).......................................... 23

*Kopec v. Coughlin*, 922 F.2d 152  (2d Cir. 1991)............................................................................ 7

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995) ........................................................................ 9

*Matthew Bender & Co., Inc. v. West Pub. Co.,* 158 F.3d 693 (2d Cir.1998) ........................ 17, 20

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ........................................... 7

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 545 U.S. 913 (2005) ............................ 17

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010) .............. 4, 5

*Ranieri v. Adirondack Dev. Grp.*, LLC, No. 11-CV-1013, 2016 WL 796061 (N.D.N.Y. Feb. 22,

    2016) ............................................................................................... 4, 5, 6, 7, 15, 16

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988) ................................................ 2

*Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994) ........................................................................ 2

*Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F.Supp.2d 526

    (E.D.Va.2008) ........................................................................................................... 20

Troll Co. v. Uneeda Doll Co*., 483 F.3d 150 (2d Cir. 2007)* ....................................................... 23

*Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369 (S.D.N.Y. Oct. 26, 2005)........................................... 3

*Wilson v. Kellogg Co.*, 628 F. App'x 59 (2d Cir. 2016)................................................................... 3

*Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1985) ................................................ 21

*Wolff v. Rare Medium, Inc.,* 171 F.Supp.2d 358 (S.D.N.Y.2001) ................................................ 23

*Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir 2014) ............................................ 4, 5

**Statutes**

17 U.S.C. § 101 .................................................................................................................... 5

17 U.S.C. § 1202 ................................................................................................................ 19

JUDICIAL IMPROVEMENTS ACT OF 1990, PL 101–650, December 1, 1990, 104 Stat 5089. 5

<u>**Statement of Facts**</u>[1]



Floor Plan
<u>Mackenzie Architects</u>



Floor Plan
<u>Design Logic</u>

On September 11, 2015, Plaintiff Mackenzie Architects, P.C. ("Mackenzie Architects" or "Plaintiff") filed a Complaint in the Northern District of New York alleging infringement of two copyrights in architectural designs created by Mackenzie Architects and later used without license or permission of any kind by Defendants/Counterclaimants. Thereafter, on February 26, 2016, Mackenzie filed a First Amended Compliant (the "Complaint") (ECF No. 41). Plaintiff attached its designs ("Mackenzie Architects Designs"), as well as the the designs impermissibly copied from Plaintiff's designs, to the Complaint.

Defendants filed motions for judgment on the pleadings. Victor Gush and V.L.G. Real Estate LLC (the "Gush Defendants") ("Gush Motion", ECF No. 49), and FGR Associates LLC, Captain's Lookout Development LLC, Clark Realty LLC, Paul Clark, and Frank Tate (the "Captain's Lookout Defendants") (Captain's Lookout Motion, ECF No. 46) filed its motions on

---

[1] The motion by the Captain's Lookout Defendants contains a Statement of Facts based almost entirely of its own allegations, that are not part of the pleadings. Their Statements of Facts should be disregarded in its entirely. The other moving defendants properly cite to the pleadings in their respective statements of fact.

March 11, 2016. Design Logic Architects, PC and Robert Bucher (the "Design Logic

Defendants") filed their motions on February 29, 2016. (Design Logic Motion, ECF No. 43).

<u>**Argument**</u>

I.  <u>**On A Motion For a Judgment on the Pleadings, The Court Must Accept
    Plaintiff's Allegations as True and Plaintiff Is Not Required To Include Detailed
    Facts Such as Which Design Elements Were Copied**</u>

In deciding a motion pursuant to Rule 12(c), the non-movant's allegations are accepted as

true, and all reasonable inferences must be drawn in the Plaintiff's favor. *Sheppard v. Beerman*,

18 F.3d 147, 150 (2d Cir. 1994) (Rule 12(c) motion evaluated using Rule 12(b)(6) standard.).

The Court should not dismiss a claim if plaintiff states "enough facts to state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).

Judgment on the pleadings is appropriate where all material facts are undisputed and "a

judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers

v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). Further, the "burden falls on the

moving party to establish that no relevant facts are in dispute." *Donahue v. Windsor Locks Bd. of

Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir. 1987)). Here, Defendants' motions fail, as Mackenzie

Architects pleaded each claim with "all the material elements necessary to sustain recovery."

*Twombly*, 550 U.S. at 562.

Defendants further argue that the Amended Complaint should fail because the facts

alleged are not sufficiently specific. Defendants argue that the copyright claims do not specify

exactly which design elements were copied or are substantially or strikingly similar to the

Mackenzie designs. This is an incorrect application of the standard, and would impose a standard far higher than any Federal Rule or relevant case requires. Plaintiff has pled factual allegations, supported in the record, that Defendants copied Plaintiff's designs.

## II.     Courts May Not Consider Items Outside Plaintiff's Pleadings

In evaluating the pleadings, the Court may consider only "… facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Wilson v. Kellogg Co.*, 628 F. App'x 59, 60 (2d Cir. 2016). The Defendants' motions include numerous statements of fact outside the pleadings, and include attached declarations alleging factual matters far beyond the pleadings. These statements are not included in the complaint or its exhibits, not incorporated by reference, and are not integral to the complaint, and thus should not be considered by the Court.

Even if considered integral to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (internal citation omitted). Here, Defendants' additional allegations and attachments include claims of originality, a disputed issue of fact. "[W]hen the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve." *Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 372 (S.D.N.Y. Oct. 26, 2005).

## III.     The Designs Are Sufficiently Similar to Survive a Motion on The Pleadings

Defendants argue that by reviewing the Designs attached to the pleadings the Court may determine the Designs are not substantially similar as a matter of law. Although a court may sometimes determine at the pleading stage that two designs are not infringing, this is not the case here as the designs are strikingly similar on their face. At the very least, the strong similarity between the works, and the significant evidence of Defendants' access to the Mackenzie Architects Designs, precludes the court from making a determination at this stage.

Whether two copyright protected works are substantially similar and thus infringing is "one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). Courts ordinarily leave the determination of substantial similarity to the trier of fact. *Id.* Courts deviate from this general rule only where "the similarity between two works concerns only non-copyrightable elements . . . or because no reasonable jury . . . could find that the two works are substantially similar." *Id*. Most cases Defendants relied on were decided on summary judgment after a factual record was developed. *See e.g Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir 2014); *Attia v. Soc'y of New York Hosp.*, 201 F.3d 50 (2d Cir. 1999); *Ranieri v. Adirondack Dev. Grp.*, LLC, No. 11-CV-1013, 2016 WL 796061 (N.D.N.Y. Feb. 22, 2016); *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, No. 2:05- 711, 2007 WL 708798, at *1 (E.D.N.Y. Mar. 6, 2007); *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008).

In cases where courts determine as a matter of law that two works are not infringing they apply the "ordinary observer" test. The test requires the court to put themselves in the shoes of an "average lay observer" and ask whether such an observer would consider the overall "aesthetic appeal" of the two works as the same. *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66. The

Second Circuit has alternatively described this standard in *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 102 (2d Cir. 1999) as requiring "good eyes and common sense" rather than a "deep study of reported and unreported cases."

Architectural works are protected by the Copyright Act, as embodied in the Architectural Works Copyright Protection Act (AWCPA). *See* JUDICIAL IMPROVEMENTS ACT OF 1990, PL 101–650, December 1, 1990, 104 Stat 5089; 17 U.S.C. § 101. In ensuring that creators of architectural works are properly in control of their creations, Congress contemplated that an architectural work by necessity consists of elements which, by themselves, are not protectable. *See* 17 U.S.C.A. § 101 ("The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features."). Where allegedly infringed works are comprised of unprotected elements, courts have "disavowed any notion" that they must "dissect" works into their "separate components, and compare only those elements which are in themselves copyrightable." Rather, in all cases, the court is "principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work." *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66. *See also Ranieri*, 2016 WL 796061, at *12.

Courts avoid dissecting because "every kind of work at some level is a compilation, an arrangement of uncopyrightable common elements." *Zalewski*, 754 F.3d at 103-04. This is equally true of architectural works. "Some architectural designs, like that of a single-room log cabin, will consist solely of standard features arranged in standard ways; others, like the Guggenheim, will include standard features, but also present something entirely new." *Id.* A review of the Mackenzie Architects designs reflects that it is much more than "standard features arranged in standard ways." *Id.*

A review of the two designs using "good eyes and common sense" leads to the conclusion that the works are substantially similar. At the very least, a review confirms that this is not one of the rare circumstances where a court can make that determination at the pleadings stage. *See Ranieri*, 2016 WL 796061 at *12. This distinguishes the *Peter Gaito* decision upon which Design Logic Defendants rely, where the pictures attached to the opinion reveal that the designs are obviously dissimilar. (Design Logic Motion, Exhibit A, ECF No. 43-8).

To reach their conclusion, Defendants rely on exhibits outside the pleadings. Defendants' affidavits go beyond the overall look and feel of the building, toward a detailed discussion of the building's interior and amenities. Including detailed affidavits from an architect and other witnesses only serves to undermine defendants' argument that a lay observer alone would be able to conclusively determine whether the designs are sufficiently similar.

In addition to the submitted affidavits, Defendants invite the Court to peruse the National CAD Standards and National Building Information Standards published by the National Institute of Buildings. Defendants' arguments are also bolstered by specious theories of Copyright Law. The affidavit of James Finning, a non-party third-party witness who had not been previously disclosed as a witness,[2] assures the court that he originated a "V" shape design even though Mr. Finning does not allege that he is an architect or that he has any architectural background or experience. The inclusion of Mr. Finning's statements as to his unprotectable "concept" of a shape is an attempt to introduce evidence beyond the pleadings to claim the Mackenzie Design is not a result of Plaintiff's original creation.

It is inappropriate to consider Defendants' affidavits without affording Plaintiff an opportunity to submit its own evidence. Motions on the pleadings are limited to consideration of

---

[2] Captain's Lookout Defendants have since disclosed the witness in a supplemental initial disclosure on April 6, 2016.

the pleadings and its attached documents. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Sheppard*, 18 F.3d at 150. Consideration of materials outside of the pleadings requires the court to either "disregard such material or give the parties notice that the motion is being converted to one for summary judgment and permit the parties to submit evidence accordingly." *Kopec v. Coughlin*, 922 F.2d 152, 155-56 (2d Cir. 1991). The additions are improper and should be ignored, but if considered, Mr. Mackenzie's affidavit attached to this response must be considered as well. (*See* Ex. A); *See also Ranieri*, 2016 WL 796061, at *14 (considering plaintiff's deposition testimony, finding it "admissible and material" on a motion for summary judgment, as well as an expert affidavit). Mr. Mackenzie's affidavit explains, in more details than is required, the similarities between the designs.

## IV. The Complaint Pleads Direct and Circumstantial Facts to Establish That All Defendants Had Access to Plaintiff's Designs

The Captain's Lookout Defendants argue that Mackenzie Architects have not presented "evidence," direct or otherwise, of Defendants' actual copying of Mackenzie Architects Designs. (Captain's Lookout Motion, EFC No. 46-1, pg. 10). The argument is inherently misleading, because there is no obligation to "present evidence" at the pleading stage. The plaintiff must merely plead facts sufficient to demonstrate a plausible possibility that the defendants copied the work. Facts sufficient to establish Defendants' access to the Mackenzie Architects Designs are pleaded, and confirmed by the Defendants' responses. In fact, the Captain's Lookout Defendants argue they had a license to use the Mackenzie Architects Designs, essentially conceding access. (Captain's Lookout Motion, EFC No. 46-1, pg. 15). Moreover, even if Defendants had not acknowledged access, the striking similarity of the designs combined with the pleaded facts establishing access are sufficient to show actual copying.

A plaintiff may show unauthorized copying by showing defendants had "access" to plaintiff's protected works. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (Appeal from summary judgment). Access means that there is a "reasonable possibility" that defendants have seen plaintiff's designs. *Id*. Proof of access can be demonstrated by either direct or circumstantial evidence. *Id.* The court in *Jorgensen* held that proof of a "close relationship" between a party in receipt of plaintiff's work and an alleged infringer is sufficient to demonstrate access. *Id.* (Access established where "intermediary was in a position to provide suggestions to the alleged copiers."); *See also Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 538 (S.D.N.Y. 2007) (Access is satisfied where plaintiff demonstrates "a particular chain of events exists by which the defendant might have gained access to the work."). Further, in *Jorgensen* the Second Circuit held there is an "inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required." *See Jorgensen*, 351 F.3d at 56.

The Complaint pleads access with regard to defendants Victor Gush ("Gush"), FGR Associates, LLC ("FGR"), and VLG Real Estate Developments, LLC ("VLG"). The allegedly infringed designs were created exclusively for Gush, FGR, and VLG for a residential development called "Captains Lookout" located in Cohoes, New York. The Mackenzie Designs were provided to these defendants.

By virtue of a close relationship with Gush, FGR, and VLG, there is circumstantial evidence that defendants Clark Realty, LLC ("Clark Realty"), Paul Clark, "Captain's Lookout Development, LLC ("Captains Lookout"), Design Logic Architects P.C. ("Design Logic"), Robert Bucher, and Frank Tate had access to plaintiff's designs.[3] Specifically, Gush sold the original project site for Captain's Lookout to Clark Realty, whose principle owner is Paul Clark.

---

[3] Only the Captain's Lookout Defendants have argued that there is no "evidence" of actual copying.

Captain's Lookout Defendants and Gush Defendants state in their counter-claims that Mackenzie Architects was contracted to make designs for the project in Cohoes, that Clark Realty and Paul Clark became involved in the same project, and that Clark retained Design Logic and Bucher to design Captain's Lookout. (*See* "Captain's Lookout Answer and Counterclaims", ECF No. 45, pg. 29-32, *See also* "Gush Answer and Counterclaims", ECF No. 48, pg. 13-15). Design Logic is principally owned by Robert Bucher, the lead architect on the project who submitted an affidavit discussing his own designs. Frank Tate is a member of both Captain's Lookout and FGR. FGR is one of the initial contracting parties with Mr. Mackenzie. There are direct and circumstantial facts of an unbroken chain of events that bind all defendants to the Captain's Lookout project for which Mackenzie Architects drafted the initial designs. It can be concluded that all defendants had access to plaintiff's designs. This is especially true given the uncanny similarity of the designs at issue.

**V.      The Striking Similarity Between Mackenzie and Design Logic's Designs Lessens the Burden of Establishing Access**

Aside from the circumstantial and admitted facts that Defendants had access to the Mackenzie Designs, the designs alleged to be independently produced by Design Logic are strikingly similar to the Mackenzie Designs. *See Jorgensen*, 351 F.3d at 56. When two works are strikingly similar, plaintiffs do not need to produce any proof of access. *Id*. Works are strikingly similar where the similarities "preclude the possibility of independent creation." *Id.* For example, in *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995), the court found striking similarity between two works where both shared a significant number of visual patterns despite there being "millions" of possible alternatives.

Beyond the distinctive ziggurat shape of the two designs, the works share a considerable number of features for which defendants have not alleged an independent source. These

similarities are readily apparent in a side by comparison of the designs, and confirmed by Steve Mackenzie in his declaration. (Ex. A.) The list of similarities contained in Mr. Mackenzie's declaration is not exhaustive, and need not be at the pleading stage. Mr. Mackenzie is willing and able to guide the court thorough all additional similarities when the appropriate time arises. *Id*. Nevertheless, the list of unexplained and highly unique similarities can convince a trier of fact to conclude that the works are strikingly similar to support a finding of unauthorized copying.

VI.     <u>**Any Alleged License Did Not Extend to The Defendants' Actions**</u>

Defendants argue that they had a license to use the copyrighted designs for the alleged acts, misleadingly arguing that "Plaintiff's own admission" establishes a broad license. In essence, Defendants argue that, notwithstanding the clear language in the contracts circulated by the parties, and the industry standards regarding an architect's retention of their copyrights, Defendants were free to do as they pleased with Defendants' designs. Defendants misrepresent the narrow scope of the license. Unless otherwise explicitly agreed upon, the work of an architect remains their own. The scope of the license is, by the parties' objective written intent and by well-known industry standards, narrow. The purpose of the license is so that the developer with whom the architect contracted can use the designs, under the authority and supervision of the architect who controls the work. It does not permit the contracting party to sell the license to another party, to provide the work to another architect to amend and edit, or to allow another architect to attribute the work as their own. Such uses are far outside the scope of the license, and as has been alleged, may infringe the architect's copyrights.

The contracting parties (Victor Gush, V.L.G. Real Estate LLC, and FGR Associates LLC) are well aware of these limitations. The contract explicitly discusses these limitations and they are standard in the industry. Moreover, the recent Northern District of New York decision*,*

*Ranieri*, clarifies all of this in a factual scenario not materially different from Mackenzie Architects. Thus, use or appropriation of the designs by non-parties to the agreement, for uses not agreed to by the parties, are infringing, unlicensed uses.

To establish an implied non-exclusive license of a work, the allegedly infringing parties must show that: 1) the licensee requested creation of a work; 2) the author made that particular work and delivered it to the licensee; and 3) the author intended that the licensee copy and distribute the work in the manner alleged by defendants. *See Ranieri* 2016 WL 796061 at *16.

As in most cases involving misuse of architectural works, it is the third factor that is disputed. The objective intent of the parties is not merely a yes or no question. Instead, it is a question of the scope of that narrow license and whether defendants exceeded that scope. By selling the designs to third parties, or by using those designs in a completely different manner than agreed upon, the parties were not acting within any implied license. Here, as in *Ranieri*, the defendants dispute whether "Plaintiff intended his drawings to be 'used on the project for which they were created, independent of the creator's involvement.'" *Id*. at 17.

Determining intent of the parties is an objective inquiry. *Id*. It is irrelevant whether Defendants subjectively believed they were entitled to do whatever they pleased with Mackenzie Architects' copyrights (although perhaps relevant to willfulness). Regardless, the parties' intent cannot be established on a motion on the pleadings. To the extent a license is argued, it could extend only to the parties that contracted with Mackenzie Architects. Defendants allege, and Plaintiff agrees, that Mackenzie Architects had no contract with Captain's Lookout Development LLC, Clark Realty LLC, Paul Clark, or Frank Tate. Similarly, although they do not argue that they had any license to use Mackenzie Architects' copyrights, Design Logic Defendants admit they had no contractual connection with Plaintiffs.

Courts apply a non-exclusive list of factors to determine the objective intent of the parties with respect to the existence and scope of a license:

1) Whether parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship.
2) Whether the creator utilized standard written contracts, such as a standard American Institute of Architects ("AIA") contract, providing that copyrighted materials could only be used with the creator's future involvement or express permission.
3) Whether the creator's conduct during creation or delivery of copyrighted material indicated that use of the material without the creator's involvement or consent was permissible.

*Id.*

Applied to Mackenzie Architects, especially considering *Ranieri*, it is obvious that any license awarded to the contracting defendants did not extend a license to other developers or architects to use independently of Mackenzie Architects' involvement. Defendants do not cite, let alone apply, any of these factors.

As for the first factor, the facts allege, and Defendants do not contest, the relationship between Mackenzie Architects and the contracting defendants was meant to be ongoing and not short-term. Mackenzie Architects entered into a contract with the contracting defendants to build a new and unique residential project in Cohoes. It also alleges the parties entered into an Authorization and Agreement to Proceed (the "AAP") on December 31, 2007, and that the parties later exchanged a standard American Institute of Architects B141 agreement ("AIA agreement"). The AIA agreement is commonly used between architects and developers, and is meant to "span[] the life a project, from conception to completion and beyond."[4] The agreement provides that "[u]nits to be configured to be phaseable in five increments…" (Ex. B, § 1.1.2.3, pg. 2). The agreement also provides for a phased payment according to a schedule (Id., § 1.5.1,

---

[4] Contract Documents, *The American Institute of Architects*, http://www.aia.org/contractdocs/AIAB095956 <Accessed April 7, 2016>.

pg. 9). According to the Complaint, the reason the relationship ended is that defendant Gush

failed in his initial attempts to obtaining financing for the project. (Complaint, pg. 8).

On the second factor, the AIA contract agreed to by the parties was materially the same

as that used in *Ranieri*. The court in *Ranieri* enforced the AIA contract as against the defendants

with whom the contract was never executed. *See Ranieri* 2016 WL 796061 at *20. The *Ranieri*

Court found that the existence of a letter contract (also with nearly identical language to

Mackenzie Architect's) evidenced the parties' intent to enter into a long-form AIA contract. *Id*.

The AAP was provided by the Captain's Lookout Defendants in their initial disclosures

under Rule 26(a)(1), which means they intend to rely on it. It provides, in relevant part:

> "This interim agreement is likewise to be absorbed and superseded by the overall AIA
> B141 Agreement once that Agreement is in place. Drawings, specifications and other
> documents, including those in electronic form, prepared by the Architect and Architect's
> consultants are Instruments of Services for use solely with respect to this Project. The
> Architect and the Architect's consultants shall be deemed the authors and owners of their
> respective Instruments of Service and shall retain all common law, statutory and other
> reserved rights, including copyrights."

(Ex. C).

Following that, the parties exchanged the AIA B141 Agreement, which provides that:

**§ 1.3.2 INSTRUMENTS OF SERVICE**

§ 1.3.2.1 Drawings, specifications and other documents . . . prepared by the Architect . . .
for use solely with respect to this Project. The Architect . . . shall be deemed the authors
and owners of their respective Instruments of Service and shall retain all . . . rights,
including copyrights.

§ 1.3.2.2 Architect grants to the Owner a nonexclusive license to reproduce the
Architect's Instruments of Service solely for purposes of constructing, using and
maintaining the Project, provided that the Owner shall comply with all obligations,
including prompt payment of all sums when due, under this Agreement.

§ 1.3.2.3 Except for the licenses granted in Section 1.3.2.2, no other license or right shall
be deemed granted or implied under this Agreement. The Owner shall not assign,
delegate, sublicense, pledge or otherwise transfer any license granted herein to another
party without the prior written agreement of the Architect . . . The Owner shall not use

the Instruments of Service for future additions or alterations to this Project or for other projects, unless the Owner obtains the prior written agreement of the Architect and the Architect's consultants. Any unauthorized use of the Instruments of Service shall be at the Owner's sole risk and without liability to the Architect and the Architect's consultants.

(Ex. B)

Each of these provisions demonstrate the parties' objective intent that the copyright in the architectural designs belonged to Mackenzie Architects only, and that the contracting parties were granted, at most, a non-exclusive license to utilize the designs only for use in the project specified in the contract. These contracts further demonstrate that the parties had no license to make any additions or alterations to the designs, to allow for another architect to utilize the designs, or to assign the right to use the designs to any other party. Each of these restrictions has been violated, as set forth in the Amended Complaint. It follows that if the contracting parties had no license to use the copyrights for infringing purposes, then the other defendants also had no such right.

The Captain's Lookout Defendants recognize *Ranieri* is relevant and applicable, but would distinguish it on irrelevant and inaccurate grounds. First, the Captain's Lookout Defendants distinguish on the basis that in *Ranieri* the defendants conceded they used and altered the plaintiff's architectural designs, whereas in this case that is a fact in dispute. This is a purely factual issue that sidesteps the shared legal issue, which is the scope of the license granted by the intended architect to the original developers. Applied to this case, the actual infringing use is irrelevant to the issue of the scope of the license. If Plaintiffs can establish, after discovery, that Defendants used Plaintiff's designs in a manner that the parties did not intend, and that it copied the copyrightable aspects of Plaintiff's designs, then there would be infringement under *Ranieri*.

Second, the Defendants focus on the fact that, as to some defendants in *Ranieri*, the parties had executed the AIA B41 contract. This argument fails to recognize that another

14

defendant, Admiral's Walk, also had no executed contract with the plaintiff. *Ranieri,* 2016 WL 796061 at \*20. Instead, the parties agreed they would enter into a standard AIA contract, which was created and circulated among the parties. The Court found that the use of the AIA standard contract, regardless of whether it was signed, was objective evidence of the parties' intent with regard to the license. *Id*. It noted that the plaintiff regularly used such contracts, and adopted the practice of other jurisdictions by "consider[ing] unexecuted contracts in determining an architect's intent when deciding whether an implied non-exclusive license was granted." *Id*. These provisions are identical to those in the Mackenzie Architects agreement, and the court held "it is clear that Plaintiff intended that a third-party be allowed to complete work on the project or make changes to his designs in only two situations: (1) if Plaintiff is adjudged in default of the Agreement (§ 1.3.2.2), or (2) if Plaintiff gave prior written consent (§ 1.3.2.3)." *Id.* at \*21. Defendants have not alleged either situation here, and even if they had, a court cannot make that determination in a motion on the pleadings.

These AIA contracts are particularly important because, as the evidence will reflect after discovery, the contracts are standard in the industry and it is the industry standard that architects retain control their copyrights. Affording the author sole ownership over their copyrights is the default in copyright law absent a written agreement clearly stating otherwise. Further, the denial of an implied license for a developer to sell and assigns rights to other architects and third parties conforms to the usual practice of Mackenzie Architects and, most likely, each of the defendants.

Lastly, Defendants allege "it was determined that Mackenzie's Drawings were unworkable for the project and could not be used." Although Plaintiff does not admit this, and the allegation cannot be established on the pleadings, it raises the issue of whether Mackenzie

Architects was terminated under the contract, immediately terminating any license extended to

the contracting Defendants. The AIA B141 contract, in language identical to *Ranieri*, provides:

> Any termination of this Agreement prior to completion of the Project shall terminate this
> license. Upon such termination, the Owner shall refrain from making further
> reproductions of Instruments of Service and shall return to the Architect within seven
> days of termination all originals and reproductions in the Owner's possession or control.

(Ex. B, § 1.3.2.2, pg. 5)

One more important aspect of *Ranieri* is that, like most cases relied upon for these issues,

it was decided on summary judgment. The parties underwent a complete discovery process. The

Court relied on testimony from the plaintiff and a third-party expert witness. To the extent that

Defendants argue the parties' intended for outsiders to abuse Mackenzie Architects' copyright in

the absence of written agreements clarifying as such, they cannot do so on the pleadings. *Cf.*

*Hanover Architectural Serv., P.A. v. Christian Testimony-Morris, N.P.*, No. 2:10-5455 KM

SCM, 2015 WL 3462889, at *17 (D.N.J. May 18, 2015) (finding that material issues of fact

preclude summary judgment).

The third factor regards whether the creator's conduct indicated permission to use its

designs without its involvement or consent. As discussed above, there is every indication the

opposite is true. Each of the written agreements denies use of Mackenzie Architects' designs by

other architects or third parties. Additionally, there is no allegation that Mackenzie Architects

delivered the designs to any party other than the contracting defendants. *See Ranieri,* 2016 WL

796061 at *19 (courts "look to whether the supposed infringer obtained the plans directly from

the supposed licensor, which would suggest permission to use them"). None of the non-

contracting defendants received the designs from Mackenzie Architects. In fact, each of those

defendants allege they had no contact with Mackenzie Architects, a fact which Mackenzie

Architects acknowledges.

For all of these reasons, the Defendants' argument for a broad license to utilize the Mackenzie Architect Designs for the infringing uses is contradicted by everything in the pleading and admitted facts. To the extent Defendants may argue their license permitted these third-party uses, they cannot do so based on the pleadings. To do so would be a refutation of *Ranieri* was well as on an attack on the integrity of an architect's copyright.

## VII.   Plaintiffs Have Sufficiently Plead Contributory Infringement

Plaintiffs have sufficiently pleaded the existence of direct infringement against all of the Defendants. *See above*. Where there is direct infringement, there can be contributory or vicarious infringement. Thus, Defendants' argument that no secondary infringement can exist is invalid.

Direct infringement is a pre-requisite to pleading contributory or vicarious liability. *See Faulkner,* 409 F.3d at 40. To plead contributory infringement, plaintiffs must allege that defendants "with knowledge of the infringing activity . . . materially contributed to the infringing conduct of another." *Matthew Bender & Co., Inc. v. West Pub. Co.,* 158 F.3d 693, 706 (2d Cir.1998). A party materially contributes where it (1) had actual or constructive knowledge of the infringing activity, and (2) encouraged or assisted others' infringement, or provided machinery or goods that facilitated infringement. *Id.* To plead vicarious liability, plaintiffs must allege: defendants (1) had the right and ability to supervise the infringing conduct; and (2) received a financial benefit directly attributable to the infringing conduct. *Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009)*; *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 545 U.S. 913 at 940 (2005).

The Gush Defendants and Captain's Lookout Defendants argue that Plaintiffs do not adequately plead secondary infringement. This is not so. The Complaint alleges that Mr. Gush and his company VLG, a party that initially contracted with Makenzie to design Captain's

Lookout, impermissibly sold those designs to a third-party. These facts support contributory infringement: (1) VLG and Mr. Gush had actual knowledge that the designs were sold to persons who would infringe upon the rights of those designs, and (2) by selling the designs, and possibly removing copyright management information, Mr. Gush encouraged or assisted others in the infringement. These facts also support vicarious liability: (1) Mr. Gush and VLG contracted with a third party and instructed them to engage in infringing activities, and thus had the right and ability to supervise the infringing conduct of those parties; and (2) Mr. Gush and VLG profited from the sale of the designs to a third party.

Plaintiff also properly pleads that defendants Captain's Lookout, FGR, Clark Realty, Paul Clark, and Frank Tate engaged in secondary infringement. Mr. Gush is alleged to have sold Mackenzie's designs to Clark Realty, principally owned by Mr. Clark. Clark Realty then contracted with Captain's Lookout, of which Frank Tate is a member, and Design Logic. Frank Tate is also a member of FGR, one of the initial contracting parties with Mr. Mackenzie and as a result had direct access to the allegedly infringed designs. These facts support contributory infringement: (1) all defendants knew, or should have known, that the designs given to them were protected by Mackenzie Architect's copyright. All Defendants were aware, or should have been aware, that any license granted by the architect did not extend to giving the designs to third parties for alteration and attribution. Plaintiff alleges that Mr. Gush sold substantially completed designs to Clark Realty. Clark Realty then entered into business with Frank Tate, an individual who knew Mr. Mackenzie's designs were protected by copyright. The close relationship between parties who initially contracted with Mackenzie and the striking similarity of the designs render it highly plausible that: (1) all parties involved knew, or had constructive knowledge, that the designs were protected by someone else's copyrights and therefore their use would infringe those

rights, and (2) Defendants worked together to knowingly exploit Mackenzie's designs for profit.

The facts also support vicarious infringement: (1) Clark Realty provided the designs to Captain's

Lookout and Design Logic and contracted with both parties to exploit the designs. Captain's

Lookout, with Frank Tate as a member and as the principle of FSG, worked and supervised the

other parties to exploit the designs; and (2) Clark Realty received money from Mr. Gush.

Captain's Lookout, Frank Tate, and FSG received money from Clark Realty for their work on

the project that involved the exploitation of the designs.

All defendants in this action are linked to Mackenzie Architects and the designs he

drafted for the Captain's Lookout project, but none had the right to use the Mackenzie Architects

Designs as they did. The facts alleged in plaintiff's complaint strongly support both direct

infringement by each defendant by virtue of access and the striking similarity of the designs and,

to the extent any party is not directly liable for infringement, that party's liability for contributory

and vicarious infringement.

## VIII.  Plaintiff Has Sufficiently Plead Facts Supporting the Claim Defendants Removed Copyright Management Information from Mackenzie's Designs

Plaintiff's Ninth through Fourteenth Claims allege removal of copyright management

information and providing false copyright management information under 17 U.S.C. § 1202 by

each of the defendants. The basis for these claims is simple: Plaintiff provided the Gush

Defendants with the Mackenzie Designs, under the AIA contract. Each page of those designs

contained Mackenzie Architects' copyright information, and listed no other author. One or more

of the Gush Defendants provided the Clark and Design Logic Defendants with the Mackenzie

Designs, with or without Plaintiff's prominently displayed copyright management information

("CMI"). In 2013, the Design Logic Defendants submitted their strikingly similar design to the

Cohoes Department of Buildings, with its own CMI prominently attached, but none of

Mackenzie Architects' information. The Complaint alleges that parties removed Mackenzie Architects' declarations of authorship and ownership, made alterations to the designs, and then passed the designs off as Design Logic's.

It is immaterial that the Design Logic Defendants' CMI was attached to a partially modified copy of the Mackenzie Designs. The hallmark of CMI removal or falsification under 17 U.S.C. § 1202(c) is removal or alteration of CMI, defined by the DMCA as "information 'conveyed *in connection with* copies' of a work" *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011) (citing 17 U.S.C. § 1202(c).

Defendants allege that, despite their striking similarity, the Design Logic designs are original works, unrelated to the Mackenzie designs. There is no record of independent creation. Regardless, Defendant's independent creation is an issue of fact, inappropriate for a motion on the pleadings. Moreover, if the work is derived from Plaintiff's, originality is no defense to removal of CMI. *See Matthew Bender*, 158 F.3d at 680. Alleged originality, among other issues of fact such as disputed contractual or implied licenses for use or scienter as to who removed or altered Plaintiff's CMI, preclude a finding on the DMCA claims. *See BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 611 (S.D.N.Y. 2010).

To prevail on a motion to dismiss, Plaintiff "need only allege (1) the existence of CMI on the [works]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *BanxCorp*, 723 F. Supp. 2d at 609. Other circuits have held precisely this type of CMI removal or alteration claim for an architectural work is a factual dispute not suitable to a motion to dismiss. *Fox v. Hildebrand*, 2009 WL 1977996, at *3 (C.D. Cal. July 1, 2009); *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F.Supp.2d 526, 537 (E.D.Va.2008) (holding the same even where defendant did not recall

seeing plaintiff's copyright notice), *aff'd on other grounds*, No. 08–2103, 377 Fed.Appx. 303, 2010 WL 1804135 (4th Cir. May 6, 2010).

IX.     **Whether The Statute of Limitations Has Elapsed Is A Question of Material Fact That Cannot Be Dismissed on the Present Motion**

Defendants argue that the breach of contract claims are barred by New York's six-year statute of limitations, but admit an issue of fact as to which contract provides the binding terms. Where an executed, final written contract is not in existence, it is well settled that New York courts look to a series of factors to establish whether an agreement was in place. "(1) whether there was an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Here, the AIA Contract best reflects the terms that the parties performed under, and supersedes any prior agreements (Ex. B).

Both the AIA Contract and the Authorization and Agreement to Proceed ("AAP") include provisions regarding payment. The AAP provides a 30-day payment period, and a 90-day period after which interest begins to accrue on outstanding payments. (Ex. C, pg. 2). The AIA Contract, § 1.3.7.3, provides:

> Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion. In no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed.

A later section, § 1.3.8, provides different scenarios for termination of the agreement, whose notice requirements vary from 7 to 90 days. Defendant argues that it was unable to use

Mackenzie Architects Designs, although it is unclear when that decision was made and whether and when Plaintiff was terminated. There was no final Certificate of Payment issued to Plaintiff. Thus, when the breach occurred, and when the statute of limitations began to run, is a question of fact. A breach of this promise to pay begins the six-year statute of limitations clock running. *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 432-33 (2d Cir. 2012).

The statute of limitation runs from the time of breach. "A cause of action for breach of contract usually accrues, and the limitations period begins to run, upon breach." *Huang v. Siam Commercial Bank Pub. Co.,* 247 Fed.Appx. 299, 301 (2d Cir.2007). Here, because Defendants dispute which agreement the parties operated under and because the date of breach under either contract is an open question of fact, the timeliness of the claim cannot be decided at this stage.

These promises to pay were breached, at the earliest, upon the Gush Defendants' last payment date, or later under the AIA Contract terms. When these occurred are questions of fact, not appropriate for finding on a motion on the pleadings. Even assuming these factual issues are integral to the pleadings, Defendants' last known payment was on February 9, 2010. Six years from that date is February 9, 2016, several months after the Complaint was filed.

Additionally, "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew…." *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 80 (1980) (internal citations omitted); *Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007). The AIA Contract contemplates continuing services until the completion of the project. (*See Ex. B, pg. 1)* ("[a]rchitectural and architectural design services for 140 housing units") and § 1.5.1 (laying out a two-phase service schedule)). These continuing obligations run at least until the time the relevant contract was breached. This

presents another question of fact inappropriate for determination on a motion on the pleadings *See Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 261 (S.D.N.Y. 2008).

Plaintiff sufficiently pled its breach of contract claims. Defendants imply that this claim should fail because the Complaint does not identify which precise contract clauses were breached, citing *Wolff v. Rare Medium, Inc.,* 171 F.Supp.2d 358 (S.D.N.Y.2001). This is not *Wolff*'s holding; it merely requires "notice of the contractual provision allegedly breached, or the nature of the breach," and the *Wolff* court only dismissed that claim with leave to re-plead with more specificity. Here, the claim is based on Defendants' failure to pay under the contract terms. This is distinct from the ambiguous blocked transactions claim in *Wolff*.

### X.     Whether Statutory Damages and Attorneys' Fees Are Available Is a Question of Material Fact That Can Not Be Dismissed on the Present Motion

Generally, when "the infringement is alleged to have commenced prior to registration and continued after registration, without cessation for any appreciable duration, statutory damages and attorneys' fees are unavailable." *See C.A. Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 364 (E.D.N.Y. 2008); *see also Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158-59 (2d Cir. 2007) (applying the same principle where "infringement is ongoing and without more than trivial interruption.").

However, a "post-registration act of infringement will not be deemed to have commenced before registration if the infringing activity ceased for an appreciable period of time." *Troll Co. v. Uneeda Doll Co.,* 483 F.3d 150, 159 (2d Cir. 2007). "In such a case, the copyright owner could recover statutory damages and attorney's fees for that new, post-registration act of infringement." *Id.* There are several distinct acts of infringement here, including: the unauthorized sale of Plaintiff's designs, the unauthorized use of Plaintiff's designs by Design Logic defendants, the construction of the first "Phase" of the Captain's Lookout buildings, and

the start of the second "Phase" of the Captain's Lookout buildings. The question of whether these are one ongoing infringement or separate infringements marked by more-than-trivial interruption is a question of fact.

## XI. Plaintiff's Claims Are Not Objectively Unreasonable and Therefore Defendants Should Not Be Awarded Attorneys' Fees Even If They Prevail on the Merits

Defendants allege that, if they are the prevailing parties in this action, they are entitled to attorney's fees on the basis of objective unreasonableness. Objective unreasonableness will be found only "when [it] is clearly without merit or otherwise patently devoid of a legal or factual basis." *HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 389 (S.D.N.Y. 2014) (citing *Porto v. Guirgis*, 659 F.Supp.2d 597, 617 (S.D.N.Y.2009)). Mere advocacy of a contrary position is not objectively unreasonable, especially in a "developing, and still somewhat uncharted, area of copyright law." *HarperCollins Publishers LLC* at 389-90. There exists no basis to award attorney's fees to Defendants.

Moreover, Second Circuit courts typically award attorney's fees only in the most egregiously frivolous or abusive copyright actions. "There is no precise rule or formula" district courts must apply, but the Supreme Court suggested a list of non-exclusive factors that courts may consider as to awarding attorney's fees: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n. 19 (1994) (internal quotation marks omitted). None of these factors are present here.

Dated: April 8, 2016                    Respectfully Submitted,


**TOR EKELAND, PC**


By: _____
Mark H. Jaffe (#519494)
Frederic B. Jennings (#519538)
Adam Elewa (#519965)
195 Plymouth Street, Fifth Floor
Brooklyn, New York 11201
T: 718-737-7264
F: 718-504-5417
fred@torekeland.com
mark@torekeland.com
adam@torekeland.com

X_____X
:
MACKENZIE ARCHITECTS, P.C.         :

Plaintiff,        :

v.        :        Civil Action No. 1:15-CV-1105

        :        (TJM/DJS)

VLG REAL ESTATE DEVELOPERS, LLC;  :
VICTOR GUSH; FGR ASSOCIATES, LLC;  :    **Certificate of Service of**
CAPTAINS LOOKOUT DEVELOPMENT,  :    **Plaintiff's Opposition to**
LLC; DESIGN LOGIC ARCHITECTS, PC;  :    **Defendants' Motions on the**
CLARK REALTY, LCC; PAUL CLARK;  :    **Pleadings Under Rule 12(c)**
FRANK TATE; and ROBERT BUCHER  :
:
Defendants.        :
:
X_____X

I, FREDERIC B. JENNINGS, an attorney duly admitted to practice before the Courts of the State of New York and the Northern District of New York, and not a party to the above-captioned action, hereby affirm the following to be true, under penalty of perjury:

1. I am over 18 years of age and am an attorney with Tor Ekeland, P.C., counsel for plaintiff Mackenzie Architects, PC.

2. On Friday, April 8, 2016, I filed Plaintiff's Opposition to Defendants' Motions on the Pleadings, including all exhibits and attachments, via ECF, causing it to be electronically served on all Defendants' counsel.

Dated: April 8, 2016           __*/s/Frederic B. Jennings*_____
                                  Frederic B. Jennings
                                  **Tor Ekeland, PC**
                                  195 Plymouth Street, Fifth Floor
                                  Brooklyn, New York 11201
                                  T: (718) 737-7264
                                  F: (718) 504-5417
                                  fred@torekeland.com