**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**MACKENZIE ARCHITECTS, PC**

                **Plaintiff,**

**v.**                                    **1:15-CV-1105**

**VLG REAL ESTATES DEVELOPERS, LLC;**
**VICTOR GUSH; FGR ASSOCIATES, LLC;**
**CAPTAINS LOOKOUT DEVELOPMENT, LLC;**
**DESIGN LOGIC ARCHITECTS, PC;**
**CLARK REALTY, LLC; PAUL CLARK;**
**FRANK TATE; and ROBERT BUCHER**

                **Defendants**.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**THOMAS J. McAVOY**
**Senior United States Judge**

<u>**DECISION and ORDER**</u>

      Before the Court are a number of motions in this case concerning Plaintiff

Mackenzie Architects, PC's claims that Defendants breached various copyright and

contract rights. Defendants seek judgment on the pleadings on Plaintiff's claims, as

well as attorney's fees. <u>See</u> dkt. ##s 43, 46, 49. Plaintiff moves to strike certain

Defendants' answers and counterclaims. <u>See</u> dkt. # 59. The parties have briefed the

issues and the court will resolve them without oral argument.

**I.      BACKGROUND**

      This matter involves alleged copyright infringement and breach of contract

between an architect and several groups of developers, builders, and another architect.

Relating the role of the various parties will help explain the dispute at the center of this

case.

      **A.      The Gush Defendants: VLG, Victor Gush, and FGR.**

The Plaintiff in this case is Mackenzie Architects, PC ("Mackenzie").  In December of 2007, Mackenzie entered into a building agreement with three of the above-named defendants: VLG Real Estate Developers, LLC; Victor Gush (controlling member of VLG); and FGR Associates, LLC (collectively, the "Gush Defendants") Mackenzie provided to the Gush Defendants a set of architectural designs and technical drawings for use on the development of a multi-family residential building called "Captain's Lookout."  The apartment building would be located on the Hudson River in Cohoes, New York.  The agreement fell through shortly thereafter.  The parties dispute the reasons why.

Mackenzie claims that the Gush Defendants failed to obtain financing for the project.  See First Amended Complaint, dkt. # 41, at ¶ 30.  The Gush Defendants claim that Mackenzie's designs were too complex and expensive.  See FGR's Answer to First Amended Complaint, dkt. # 45, at ¶ 32; VLG's Answer to First Amended Complaint, dkt. # 48, at ¶ 29.  Regardless, the Gush Defendants parted ways with Mackenzie.[1]  Despite being unable to use Mackenzie's specific designs, Gush was still interested in building a large apartment building on the Hudson River in Cohoes, New York.  See Complaint, dkt. # 41, at ¶ 31.

**B.    The Captain's Lookout Defendants: Clark Realty, Paul Clark, Frank Tate, Captain's Lookout Development, LLC.**

After the agreement with Mackenzie fell through, Mr. Gush looked elsewhere to complete the project.  Id.  Mackenzie claims that "[w]ithout any notice to Mackenzie,

_____

[1] Mackenzie claims that VLG and FGR did not satisfy payment obligations.  See Complaint, dkt. # 41 at ¶ 30.  FGR claims that Mackenzie was compensated more than the prevailing market rate for its services.  See FGR's Answer, dkt. # 45 at ¶ 36.

without Mackenzie's authorization or permission, and without any compensation . . . to Mackenzie . . . , Mr. Gush sold the project site, along with the Designs to Clark Realty."[2] Id. Clark Realty's principal owner is Paul Clark. Clark is also the CEO of the building group called "Captain's Lookout Development, LLC." Frank Tate is a member of the Captain's Lookout Development group. Now in charge of the project, these Defendants (the "Captain's Lookout Defendants") began work in the Fall of 2013. See First Amended Complaint, dkt. # 41 at ¶ 37.

### C. The Design Logic Defendants: Design Logic and Robert Bucher

The Captain's Lookout Defendants retained a new architect, Robert Bucher of Design Logic, to create and design an apartment building to be located on the same project site for which Mackenzie had originally designed Captain's Lookout. Design Logic submitted its design to the City of Cohoes Building and Planning Department in September 2013. Id. at ¶ 33. The record is in the name of Design Logic, with a copyright notice attributable to Design Logic only. Id. Design Logic contends that it "created an entirely original plan for Captain's Lookout which bears little resemblance to the Mackenzie Plain." See Design Logic's Motion for Judgment on the Pleadings, Memorandum of Law, dkt. # 43-7, at 2. Mackenzie claims that Design Logic infringed on its design, as the "overall look and feel of the Captain's Lookout Design is nearly identical." See First Amended Complaint, dkt. # 41, at ¶ 36. Mackenzie claims that it is the owner of valid copyrights of the original Captain's Lookout design, and that Design

---

[2] The Gush Defendants claim that Mackenzie conveyed a license to use the drawings for the Captain's Lookout project. See FGR's Answer, dkt. # 45 at ¶ 39; VLG's Answer, dkt. # 48, at ¶ 36.

Logic had access to and infringed on those copyrights. Upon learning that its architectural designs and technical drawings were possibly misappropriated by others, "Mackenzie . . . applied to register the copyright with the United States Copyright Office." Id. at ¶ 35.

### D. Mackenzie's Complaint

Mackenzie's Amended Complaint raises fifteen causes of action:

1) Direct Copyright Infringement against the Clark Defendants and Design Logic Defendants. (1,2)

2) Vicarious Copyright Infringement against the Gush Defendants, the Clark Defendants, and the Design Logic Defendants. (3,4,5)

3) Contributory Copyright Infringement against the Gush Defendants, the Clark Defendants, and the Design Logic Defendants. (6,7,8)

4) Removing Copyright Management Information and Providing False Management Information against the Gush Defendants, the Clark Defendants, and the Design Logic Defendants. (9,10,11,12,13,14)

5) Breach of Contract against VLG Real Estate and FGR Associates, LLC. (15)

After being served with the Complaint, the Defendants answered and then filed the instant motions for judgment on the pleadings. Plaintiff likewise moved for judgment on the pleadings on the Gush and Captain's Lookout Defendants' counterclaims, while also seeking to strike portions of their answers and counterclaims. The parties briefed the issues, bringing the case to its present posture.

## II. LEGAL STANDARD

Defendants have moved for judgment on the pleadings. Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "'In

deciding a Rule 12(c) motion, [a court will] apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawling all reasonable inferences in favor of the nonmoving party.'" <u>Mantena v. Johnson</u>, 809 F.3d 721, 727-28 (2d Cir. 2015) (quoting <u>Burnette v. Carothers</u>, 192 F.3d 52, 56 (2d Cir. 1999)).  Under this standard, the "'complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Johnson v. Rowley</u>, 569 F.3d 40, 44 (2d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotations omitted)).  Plaintiff has moved to dismiss Defendants' counterclaims.

In addressing such motions, the Court applies the same standard as used in 12(b)(6) and 12(c) motions. <u>Holmes v. Grubman</u>, 568 F.3d 329, 335 (2d Cir. 2009).

## III.    ANALYSIS

The Court will address each of the various motions in turn.

### A.  Design Logic's Motion for Judgment on the Pleadings

As a general matter, Plaintiff alleges that Design Logic infringed on its Captain's Lookout design.  Plaintiff alleges "while having such access and possession, [Design Logic], without authorization from Plaintiff, with knowledge that such authorization was required, and with good reason to believe that no such authorization existed, copied Plaintiff's copyrighted design."  <u>See</u> First Amended Complaint, dkt. #41, ¶ 62.  Plaintiff argues that its original designs were copied, and used by the Clark Defendants and Design Logic to complete the Captain's Lookout project.  <u>Id.</u>  Plaintiff alleges that the "filed drawings and finished project are nearly identical to Plaintiff's designs."  <u>Id.</u> at ¶

63.

Defendant Design Logic seeks judgment on the pleadings.  Design Logic argues

that Plaintiff could not prevail on any of its claims of copyright violations raised against

Design Logic even if all facts alleged proved true.   Design Logic contends that the

designs are not "substantially similar," and that "Plaintiff cannot establish the [Design

Logic] unlawfully infringed upon its copyright."  See Design Logic's Motion for Judgment

on the Pleadings, Memorandum of Law, dkt. # 43-7, at 4.  The Court concludes that

Design Logic has not met its burden of showing that the "[nonmoving party] can prove

no set of facts in support of his claim which would entitle him to relief." Patel v. Searles,

305 F.3d 130, 135 (2d Cir. 2002).

In order to establish a claim of copyright infringement, "a plaintiff with a valid

copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's

work; and (2) the copying is illegal because a substantial similarity exists between the

defendant's work and the protectible elements of plaintiff's." Peter F. Gaito

Architecture, LLC v. Simone Development Corp., 602 F.3d 57, 63 (2d Cir. 2010)

(quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir.1999)).  In this case, the

principal issue is whether a substantial similarity exists between Design Logic's designs

for the Captain's Lookout project and the protectible elements of Plaintiff's design.  A

plaintiff must first establish actual infringement before he can prevail on a claim for

vicarious or contributory infringement.  Faulkner v. Nat'l Geographic Enters., 409 F.3d

26, 40 (2d Cir. 2005).  Defendants' arguments focus on copying and substantial

similarity, regardless of the type of copyright claim.

To satisfy the first element of an infringement claim—the "unauthorized copying"

element—a plaintiff must show both that his work was "actually copied" and that the portion copied amounts to an "improper or unlawful appropriation." Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998). "Actual copying may be established by direct or indirect evidence." Boisson v. Banian, Ltd., 273 F.3d 262, 267 (2d Cir.2001). Further, a plaintiff may establish copying with circumstantial evidence "by demonstrating that the person who composed the defendant's work had access to the copyrighted material," Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1249 (11th Cir.1999); see also Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir 1986), and that there are similarities between the two works that are "probative of copying," Repp v. Webber, 132 F.3d 882, 889 (2d. Cir. 1997). Access means that an alleged infringer had a "reasonable possibility"—not simply a "bare possibility"—of seeing or hearing the prior work; access cannot be based on mere "speculation or conjecture." Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir.1988).

Plaintiff has satisfied the first element of the prima facie copyright infringement claim. Plaintiff's Complaint contains a sufficient number of circumstances, with respect to access, for the Court to connect with respect to Design Logic's motion for judgment on the pleadings. The Clark Defendants retained Design Logic after they were allegedly sold (or licensed)[3] the Mackenzie design. Despite claiming that Design Logic "started from scratch," Design Logic's final design of the apartment complex is similar to Mackenzie's design in several important ways. Taking Plaintiff's facts as true, there is a

---

[3] The Gush Defendants claim that Mackenzie licensed them to use the building design. Mackenzie claims that the Gush Defendants impermissibly sold the design to Clark Realty.

reasonable probability that Design Logic had access to Mackenize's designs.

To satisfy the second element, "[t]he standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001) (quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 100 (2d Cir.1999)).  In applying the so-called "ordinary observer test," the Court asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1002 (2d Cir.1995).  On occasion, though, the Second Circuit has noted that when faced with works "that have both protectible and unprotectible elements," the analysis must be "more discerning," Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp., 25 F.3d 119, 123 (2d Cir.1994), and that the Court instead "must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar," Knitwaves, Inc., 71 F.3d at 1002.

No matter which test is applied, however, the Second Circuit has disavowed any notion that the Court is "required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable."  Id. at 1003. Instead, the Court is principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 133 (2d Cir.2003); see Knitwaves Inc., 71 F.3d at 1003, as instructed by our "good eyes and common sense," Hamil Am., 193 F.3d at 102.  This is so because "the defendant may infringe on

the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of [unprotectible components]—are considered in relation to one another." Tufenkian Import/Export Ventures, Inc., 338 F.3d at 134. Thus, in the end, the Court's inquiry necessarily focuses on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Knitwaves Inc., 71 F.3d at 1004 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 358 (1991)).

With respect to substantial similarity, the Court finds Design Logic's motion for judgment on the pleadings without merit. The "ordinary observer" test has traditionally been treated as a question of fact. In discrete circumstances, courts have determined substantial similarity on a motion to dismiss or judgment on the pleadings, but generally prefer to wait until the summary judgment stage of the litigation. Given the amount of circumstantial evidence provided by Plaintiff, and given the visual similarity of the designs, the Court finds that Design Logic has not demonstrated that Plaintiff has stated no facts that could entitle Plaintiff to relief. Defendant's motion will be denied.

Design Logic also seeks attorneys fees, contending that Plaintiff's Complaint was frivolous and that, as prevailing party, Design Logic should be able to recover such fees under the Copyright Act. See 17 U.S.C. § 505 ("the court in its discretion may allow the recovery of full costs by or against any party [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs."). Design Logic has not prevailed, and is not entitled to any fees. The motion will be denied in this respect as

well.

**B.  Captain's Lookout Defendants' Motion for Judgment on the Pleadings**

Defendants Captain's Lookout Development LLC, FGR Associates LLC, Clark Realty, LLC, Paul Clark and Frank Tate (the "Captain's Lookout Defendants") also move for judgment on the pleadings.  Defendants argue that Plaintiffs have failed to provide adequate support for their allegations of copyright infringement and breach-of-contract against them.

**i.  Copyright Claims**

Defendants argue that Plaintiff has not alleged any actual copying and that, even if allegations of actual copying were present, Plaintiff has not alleged substantial similarity.  For the same reasons explained above with reference to the Design Logic claims, the Court rejects these arguments.

Additionally, the Defendants contend that any use of the Mackenzie Drawings was authorized, and thus no infringement occurred.  A copyright "owner may give a license to someone to exploit the work in some way, provided he owns that particular copyright interest."  Davis v. Bilge, 505 F.3d 90, 99 (2d Cir. 2007).  "A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."  Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998).  This right of use is not absolute, however, because while "[a] valid license . . . immunizes the licensee from a charge of copyright infringement," that immunity applies only when "the licensee uses the copyright as agreed with the licensor."  Davis, 505 F.3d at 100.

Plaintiff's Amended Complaint alleges that:

25.     The parties understood and agreed that any designs created by Mackenzie Architects would be used on a non-exclusive basis by the Gush Defendants only for Captain's Lookout. The parties never agreed or even contemplated that the Gush Defendants' non-exclusive license to use the designs was transferable or assignable.

26.     In a document titled Agreement to Proceed dated December 31, 2007, the parties memorialized their agreement that Mackenzie Architects would retain its copyrights, and provided that it was a temporary short form agreement pending a subsequent "AIA" contract. (Exhibit H).

27.     The parties exchanged the AIA agreement, (Exhibit A), to supersede an earlier executed agreement to proceed. The contract's written terms confirm the oral understanding of Mr. Gush and MacKenzie Architects: that Mackenzie Architects retained all copyrights and that FGR was granted only a non-exclusive, non-assignable license in exchange for payment in full. The contract stated that if the owner failed to fulfill its obligations under the contract, it would be considered substantial nonperformance of the contract and there would be no license.

Amended Complaint at ¶¶ 25-27. Defendants contend that these passages constitute an admission by Plaintiff that their use of the copyrighted material was a licensed one. The Court disagrees. Courts treat licenses as contracts in this context, and "'[i]n interpreting a contract, the intent of the parties governs. A contract should be construed so as to give full meaning to all of its provisions.'" Chapman v. New York State Div. for Youth, 546 F.3d 230, 236 (2d Cir. 2005) (quoting Am. Express Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990)). Here, Plaintiff does not even allege that an agreement existed to provide the Lookout Defendants with a license; the Complaint specifically alleges that any license was granted to the Gush Defendants. Assuming that the Captain's Lookout Defendants were somehow beneficiaries of that license, the Complaint also alleges that the license could not be assigned to another architect. The Complaint here alleges that the Captain's Lookout Defendants provided Design Logic with copies of the plans, and that

11

Design Logic violated Plaintiff's copyright in designing the buildings actually constructed. Accepting all of Plaintiff's allegations as true, the Court finds that nothing in the Complaint indicates that a license immunized any of the Defendants' infringement of Plaintiff's copyright.

Defendants also argue that Plaintiff's claims for removing copyright information and providing false management information must also fail. According to Defendants, such allegations "are based on the bald allegation that Design Logic wrongfully copied the Mackenzie Drawings." Defendants rely on their argument that nothing in the Complaint establishes such copying. As the Court has rejected this argument, the Court will deny the motion to dismiss on these grounds as well.

The Lookout Defendants' motion will thus be denied with respect to the copyright claims. Because the Court finds that Plaintiff has stated a claim for copyright infringement, the Court will also deny Plaintiff's motion for attorney's fees pursuant to 17 U.S.C. § 505.

### ii. Contract Claims

Defendants next argue that Plaintiff has failed to allege facts sufficient to give rise to a contract claim. Plaintiff does not allege any completed agreement between the parties and therefore cannot make out a contract claim. Even if the claim were properly pled, they insist, the statute of limitations has run.

In New York, "[t]he essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." PFM Packaging Mach. Corp. v. ZMY Food

12

Packing, Inc., 16 N.Y.S. 3d 298, 2015 N.Y. App. Div. LEXIS 6711 at *2 (2d Dept. Sept. 16, 2015).  Defendants argue here that Plaintiff has not alleged a contract between the parties.  "'In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds.'" Minelli Constr. Co., Inc. v. Volmar Constr., 917 N.Y.S.2d 687, 688, 82 A.D. 3d 720, 721 (2d Dept. 2011) (quoting Brown Bros. Elec. Contrs. v. Beam Constr. Corp., 41 N.Y.2d 397, 399, 361 N.E..2d 999 (1977)).  "'Generally, courts look to the basic elements of the offer and acceptance to determine whether there is an objective meeting of the minds.'" Id. (quoting Matter of Express Indus. & Term. Corp. v. New York State Dept. of Transp., 93 NY2d 584, 589, 715 N.E.2d 1040 (1999)).

New York applies a six-year statute of limitations to contract claims.  NY CPLR § 213(2).  The six-year period "begins to run when a cause of action accrues[.]" Ely-Cruikshank Co., Inc. v Bank of Montreal, 81 N.Y.2d 399, 402, 615 N.E.2d 986, 986 (N.Y. 1993).  A contract claim in New York accrues "'from the time of the breach though no damage occurs until later.'" Id.  quoting 6 Williston, CONTRACTS § 2004, at 5641 (rev. ed. 1938)).  "It is well settled law that a contract is not breached until the time set for performance has expired."  Rahmani Corp v. 9 East 96th Street Apartment Corp., 211 A.D.2d 262, 265, 692 N.Y.S.2d 382, 384 (1st Dept. 1995).  At the same time, if "'there has been an anticipatory breach of a contract by one party, the other party may treat the entire contract as broken and may sue immediately for the breach.'" Id. (quoting 22 NYJur2d, Contracts §§ 387-393, at 295).  Still, a party need not be aware of the breach for the claim to accrue.  T & N PLC v. Fred S. James & Co. of New York,

Inc., 29 F.3d 57, 60 (2d Cir. 1994).

The Amended Complaint alleges that "Plaintiff and Defendants FGR and VLG contracted for Plaintiff to create and provide designs for the project Captain's Lookout, in consideration totaling $383,775, of which $281,175 was due upon completion of design development and construction document creation, the rest to be paid in installments." Amended Complt. at ¶ 107. Though Plaintiff "performed under the contract," Defendants did not pay the entire amount due. Id. at ¶ 108. Plaintiff "substantially completed the tasks under the contract" and gave the Gush Defendants drawings and designs in March or April of 2009. Id. at ¶ 28. Plaintiff filed its initial Complaint in this action on September 11, 2015.

Plaintiff's brief points to two documents attached to the Amended Complaint which allegedly raise questions of fact as to whether the statute of limitations has run. The first document is titled "Authorization and Agreement to Proceed." See Exh. H to Amended Complaint, dkt. # 41-8. That document provides that:

> Mackenzie Architects, P.C. (MAPC) is hereby requested and authorized by FGR Associates, LLC (Owner), to provide professional architectural and/or engineering services for Captain's Lookout Apartments (Project) as described below:
> Initial Architectural and Engineering Services for a 138 unit four level housing development with parking below, based on design documents dated December 12, 2007. Services to be in accordance with proposed letter dated December 3, 2007. This agreement is intended to allow A/E to continue provision of services while finalizing terms of overall agreement, and supersedes and absorbs prior agreement dated June 8, 2007. This interim agreement is likewise to be absorbed and superseded by the overall AIA B141 Agreement once that Agreement is in place.

Id. The work was to be performed on a lump sum basis for a fee of $180,000 and costs. Id. The agreement further provided that "[t]he term of this authorization

commences on the date of Owner's signed acceptance of this agreement through January 1, 2009." Id. The agreement also states that "[b]illings for the above will be monthly and are due and payable 30 days from the date of the invoice." Id. A service is added for unpaid invoices after 90 days. Id. The agreement is dated December 31, 2007 and signed by Stephen P. Mackenzie for Mackenzie Architects, P.C. Id. No one signed the agreement for FGR Associates, the "Owner" in the agreement. Id.

The second document is titled "AIA Document B151–1997 Part 1: Standard Form of Agreement Between Owner and Architect with Standard Form of Architect's Services. Exh. A to Amended Complaint, dkt. # 41-1. The agreement is stamped "draft," and contains as parties Mackenzie Architects and FGR Associates. Id. The agreement contains detailed terms concerning the parties' obligations, the cost of the work, the ownership of the drawings, resolution of disputes, payments, expenses, and compensation. Id. Included in the terms is a provision providing that "[t]he Authorization and Agreement to Proceed dated June 8, 2007 is hereby absorbed and superseded by this Agreement." Id. at § 1.4.1.3. The agreement provided for compensation of a "[l]ump sum of $383,775 through completion of Construction Documents for all 140 units." Id. at § 1.5.1. "Schematic design" was to be "completed initially for all phases." "Fees for schematic design of all phases and balance of Phase One and Phase Two services . . . shall be $281,175." Id. "Compensation of $34,200 per phase of each subsequent phase shall be paid as that phase is initiated and services completed on that phase." Id. Payment would be "based on monthly progress." Id. The version of the agreement provided by Plaintiff is signed only by the Plaintiff. Id.

15

As the Court finds the statute-of-limitations issue dispositive, the Court will decline to address whether Plaintiff has actually pled a breach. With reference to the statute of limitations, Plaintiff argues that there is an issue of fact as to which of these two contracts represents the agreement between the parties. Moreover, the two agreements have different explanations for the statute of limitations. The second agreement provides that:

> Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring after Substantial Completion. In no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed.

Id. at § 1.3.7.3. Plaintiff contends that the date on which any claims accrued is unclear, since Plaintiff received no final certificate of payment and thus cannot know when the breach of contract actually occurred: "because Defendants dispute which agreement the parties operated under and because the date of breach under either contract is an open question of fact, the timeliness of the claim cannot be decided at this stage."

The Court here applies the Rule 12(b)(6) standard, taking notice of the agreements referenced in and incorporated by the Amended Complaint. The question, therefore, is not whether there is a question of fact about whether the statute of limitations ran before Plaintiff filed the Complaint, but whether the Plaintiff has alleged facts sufficient plausibly to allege that the Amended Complaint was timely filed. As explained above, Plaintiff alleges that the breach of contract came when Mackenzie Architects performed under the contract and Defendants refused to pay. As dates for these events, Plaintiff provides only that Mackenzie completed its performance in March

or April 2009, and that Defendants refused to pay the amount agreed to. Plaintiff

provides no date for this event, but did not file a Complaint until September 2015, well

more than six years after Defendants' obligation to pay supposedly arose. Plaintiff

argues that the agreement was more complicated than stated in the Complaint, and

cites to the two agreements as proof. According to the Plaintiff, Defendants had a

series of obligations to pay and failed to do so. Plaintiff does not, however, allege when

those obligations arose. Without such allegations, the Court cannot find that Plaintiff

has plausibly alleged facts sufficient to establish that Plaintiff timely filed the breach-of-

contract action. The Court will therefore grant the Defendants' motion with respect to

this claim.

The Court will grant the motion without prejudice. The Plaintiff has not alleged

facts sufficient to establish that the claim was timely filed. At the same time, Plaintiff

points to facts which could, if alleged, establish that the statute of limitations had not run

when Plaintiff filed the Complaint. Assuming that Plaintiff can allege dates on which

Defendants failed in their obligation to pay under the alleged contract, the Court could

find that Plaintiff has sufficiently pled a contract claim. The Court will provide Plaintiff

with an opportunity to raise that claim.

### iii. Damages Pursuant to 17 U.S.C. § 412

Defendants contend that Plaintiffs are precluded from obtaining statutory

damages or attorney's fees under the Copyright Act. They cite to 17 U.S.C. § 412,

which provides in relevant part that:

> In any action under this title, other than an action brought for a violation of the
> rights of the author under section 106A(a), an action for infringement of the
> copyright of a work that has been preregistered under section 408(f) before the

commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees . . . shall be made for

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

Plaintiff's Amended Complaint contains a certificate of registration for Mackenzie Architect's Captain's Lookout Design from the United States Copyright Office. <u>See</u> Exh. F to Amended Complaint, dkt. # 41-6. The effective date of registration is March 18, 2014. <u>Id.</u> The registration lists the date of completion/publication as 2009. A second registration for the same design has an effective date of registration of June 22, 2015. <u>See</u> Exh. G to Amended Complaint, dkt. # 41-7. That registration likewise lists 2009 as the year of completion/publication. <u>Id.</u>

The question here thus turns on whether the work in question was published or unpublished. If published, no statutory damages are available to the Plaintiff. The registration came years, not months, after 2009, when Plaintiff admits the work was completed and given to the Defendants. If unpublished, then Plaintiff has alleged facts sufficient to survive this motion as the Plaintiff alleges that at least some infringement occurred after the registration of the copyrights. The Court will find, for the purposes of the instant motion, that the Plaintiff has alleged that the architectural drawings in question were unpublished, and that any infringement after the registration dates of the

works in question could be subject to the damages available under Section 412.[4]   The

motion will be denied in this respect as well.  Defendants may of course move for

summary judgment in this respect after discovery establishes the exact nature and date

of the allegedly infringing acts.

### C.  Gush Defendants' Motion

The Gush Defendants seek judgment on the pleadings on grounds similar to

those of the Captain's Lookout Defendants.  The Court will address them in turn.

### i.  Copyright Claims

Like the other Defendants, the Gush Defendants argue that the Court must

dismiss Plaintiff's copyright claims because Plaintiff has not sufficiently pled substantial

similarity.  The Gush Defendants point the Court to Design Logic's moving papers in

support of their argument, while also arguing that the Plaintiff's claims against them are

"wholly conclusory" and fail to point to any plausible liability theory.   The Court

disagrees, and for the same reasons as stated above, the Court will deny the motion on

the copyright claims on this basis.

The Gush Defendants also argue that the Amended Complaint is deficient in

terms of the allegations laid directly against them.  They contend that Plaintiff has not

_____

[4]The Copyright Act defines "[p]ublication" as "the distribution of copies . . . of the
work to the public by sale or other transfer of ownership, or by rental, lease or lending.
The offering to distribute copies . . . to a group of persons for purposes of further
distribution, public performance, or public display, constitutes publication."  17 U.S.C. §
101.  Courts evaluating architectural drawings in the context of Section 412 have
concluded that architectural drawings, disseminated only to a select group of users for a
limited purpose and without the right of wider publication or sale, are "unpublished
works" within the meaning of the Act.  See Schuchart & Assocs. v. Solo Serve Corp.,
220 U.S.P.Q. 170, 179-180 (W.D. TX 1983).

alleged that the Gush Defendants "acted in concert" with a direct infringer, or that they

are liable under a vicarious infringement theory because they received a direct benefit

from the infringement or had the ability to direct and control such activity.

The Complaint alleges the following relevant facts in reference to the Gush

Defendants:

> 24.  VLG, FGR, and Mr. Gush (collectively, the "Gush Defendants") retained Mackenzie Architects as a consult to design a brand new and unique design for a project called "Captain's Lookout," a multi-family residential building with related parking and a clubhouse and pool for resident use on about 6.4 acres between Delaware Avenue and the Hudson River in Cohoes, New York.  Mackenzie discussed with the Gush Defendants that the aesthetic should maximize waterfront views in all units.
> (see paragraphs 25-27 recited above)
> . . .
> 30.  Upon information and belief, Mr. Gush failed in his initial attempts to obtain financing for the project.  VLG is still an active company registered with the New York Department of State as of June 26, 2015.  FGR is an inactive company registered with the New York Department of State as of June 26, 2015.  Although Mackenzie had substantially performed and provided the copyrighted designs, the Gush Defendants did not satisfy the payment obligations, leaving a balance remaining.
> 31.  Mr. Gush parted ways with FGR, but he and FGR decided to revive the project at the expense of Mackenzie.  Without any notice to Mackenzie, without Mackenzie's authorization or permission, and without any compensation or attribution to Mr. Mackenzie or Mackenzie Architects, Mr. Gush sold the project site, along with the Designs, to Clark Realty.  Upon information and belief, Mr. Clark agreed to purchase the plans on behalf of Clark Realty.
> 32.  Clark Realty then contracted with other parties, including Captain's Lookout Development, LLC, to build Captain's Lookout.  Mackenzie's copyrighted architectural designs and technical drawings were provided to other developers and architects with, upon information and belief, all of Mackenzie's personally identifying information removed.

Amended Complt. at ¶¶ 24, 30-32.

Federal copyright law does not expressly establish liability for vicarious

infringement.  Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010).  Courts

have been clear, however, that "based on 'the common-law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor,' . . . 'one who, with knowledge of the infringing activity, *induces*, causes or *materially contributes to the infringing conduct of another*, may be held liable as a 'contributory' infringer.'" Id. (quoting Gershwin Publishing Corp. v. Columbia Artists Management, 443 F.2d 1159, 1162 (2d Cir. 1971) (emphasis in original). Liability for vicarious infringement has an "objective standard[:] . . . contributory infringement liability is imposed on persons who 'know or *have reason to know*' of the direct infringement." Id. (quoting A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1020 (9th Cir. 2001) (emphasis in original)). A defendant is liable when "the defendant engages in 'personal conduct that encourages or assists the infringement.'" Id. at 118 (quoting Napster, 239 F.3d at 1019). In the end, the issue turns "'upon a determination of the function that [the alleged infringer] plays in the total [reproduction] process.'" Id. (quoting Gershwin, 443 F.2d at 1162 n.8).

The Court finds these allegations sufficient to establish contributory liability under the Copyright Act. Plaintiff alleges that the Gush Defendants had control of the copyrighted material that the Design Logic Defendants allegedly infringed and sold that material to Clark Realty despite knowledge that their license restricted use of the copyrighted material. Design Logic then allegedly infringed the copyrighted designs in developing the Captain's Lookout property. Such allegations make it plausible that the Gush Defendants contributed to the infringement of Plaintiff's deisgn. Moreover, the Court finds the inference reasonable that, in selling copyrighted designs to a company looking to develop the property, the Gush Defendants knew or had reason to know that

the next design would violate Mackenzie's copyright. Such allegations make Plaintiff's vicarious liability claim plausible on its face. The Court will deny the motion in this respect as well.

The Gush Defendants also seek dismissal of Plaintiff's claims for removal and false information. They argue first that, since no infringement occurred, no claims for removal of copyright information or providing false information can arise. As the Court has found that Plaintiff has stated an infringement claim, the motion will be denied on this basis.

The Gush Defendants argue as well that Plaintiff has failed to allege any conduct against them that would lead to liability. They contend that no allegations establish that they played any role in removing copyright information, and that any claims against them are merely generalized and conclusory.

Plaintiff's Amended Complaint alleges that:

> 86. Plaintiff's Designs were given to the Gush Defendants with personally identifying copyright management information ("CMI"), such as prominent marks displaying Mackenzie's name and logo.
> 87. Upon information and belief, Defendants removed Plaintiff's CMI. Upon information and belief, removal of the CMI enabled Design Logic to add information falsely identifying Defendant Design Logic as its author.

Amended Complt. at ¶¶ 86-87. The Court finds these allegations sufficient to survive Defendants' motion. Making all inferences in Plaintiff's favor, the Court finds that Plaintiff's have pled sufficient facts to make plausible that the Gush Defendants were involved in removing copyright information from the documents in question in a fashion that permitted the Design Logic Defendants to falsely identify themselves as producers of the design. The Court reads the allegations to say that the Gush Defendants

22

received material with copyright information on it, and that Defendants–which presumably include the Gush Defendants–removed that information to facilitate a false copyright claim. The motion will be denied in this respect as well.

For the same reasons as stated above, the Court will deny the Gush Defendants' motion with respect to any award of statutory damages and attorneys fees as under 17 U.S.C. § 412.

The Court will also deny any award of attorneys fees to the Gush Defendants. The Court has found that Plaintiff has largely stated a copyright claim against them and thus the claims are not frivolous.

### ii.  Contract Claims

Like the Captain's Lookout Defendants, the Gush Defendants insist that Plaintiff's contract claim against them fails to meet the plausibility standard.  Moreover, they contend that, even if properly pled, the claim is barred by the statute of limitations. For the reasons stated above, the Court finds that Plaintiff has not pled facts sufficient to determine whether the six-year statute of limitations has run.  The Court will grant the Gush Defendants' motion in this respect without prejudice.  Plaintiff will be permitted to file a Second Amended Complaint that alleges facts which establishes the timeliness of the action.  Plaintiff should also plead facts sufficient to establish a contract between the Plaintiff and the Gush Defendants and demonstrate a breach of that alleged contract.

### D.  Plaintiff's Motion

Plaintiff seeks judgment on the pleadings on The Gush and Design Logic

Defendants' counterclaims that allege fraud on the Copyright Office.   Plaintiff also moves to strike affirmative defenses which contend that the copyright registrations in questions are invalid.

### i.  Motion to Dismiss Counterclaims

### a.  Counterclaims

The Lookout Defendants have answered the Amended Complaint and raised five counterclaims; plaintiff seeks judgment on the first and third claims.  <u>See</u> dkt. # 45.  The Counterclaim relates the Lookout Defendants' version of their course of dealings with Macekenzie.  <u>Id.</u> at ¶¶ 13-39.  Of relevance to Plaintiff's motion, the Counterclaim alleges that the Amended Complaint alleges violations of two copyrights, one registered as No. VAu001210869 (the "'869 Registration") and Copyright Registration No. VAu001210868 (the "'868 Registration").  <u>Id.</u> at ¶ 53.  Defendants allege that "Mark Jaffe, Esq., the attorney representing Mackenzie in this litigation, personally applied for and prosecuted the '868 Registration on" Mackenzie's behalf, certifying "that the information in the '868 Registration was correct."  <u>Id.</u> at ¶ 56.  He also "was involved" with filing the '869 Registration and communication with the copyright office about that document.  <u>Id.</u> at ¶ 57.  Plaintiff alleges that both Registrations were registered as "unpublished" works, "even though the Mackenzie Drawings are a 'published' work, as defined by copyright law."  <u>Id.</u> at ¶ 58.  Defendants allege that this claim that the work was unpublished seeks "impermissibly [to] extend the term of [Plaintiff's] copyrights."  <u>Id.</u> at ¶ 62.

Plaintiff filed and registered both registrations more than five years after

publishing the work; Defendants contend that as a result the registrations lack a presumption of validity.  Id. at ¶ 59.   The Counterclaims also allege several defects in Plaintiff's application, including failures to properly attribute non-copyrightable elements and failure to properly attribute authorship to certain parts of the design.  ¶¶ 63-64. Plaintiff's counsel had filed the '869 registration as an "Architectural Work" and the '868 registration as a "Technical Drawing."  Id. at ¶¶ 65-66.  The Copyright Act requires that copies of each work, known as "deposit copies," be filed with the Copyright Office.  Id. at ¶ 67.  The Act permits deposit copies of Architectural Work and Technical Drawings to be "filed together"; Plaintiff filed the two copies 15 months apart.  Id. at ¶¶ 68-69.

Defendants contend that "Mackenzie knowingly and intentionally provided or misrepresented information to the Copyright Office in connection with its copyright applications that was inaccurate, false, and/or misleading."  Id. at ¶ 73.  Based on this information, the Registrar of Copyrights granted the two registrations in question.  Id. at ¶ 74.  Defendants allege that the Registrar would not have granted the two copyrights "but for the inaccurate, false, and/or misleading information that was knowingly and intentionally provided or misinterpreted to the Copyright Office."  Id. at ¶ 75.

The first and third counterclaims raised by the Lookout Defendants seek a declaratory judgment that the two copyright registrations are invalid.  They contend that the registrations were granted based on information that was "inaccurate, false, and/or misleading," and that the registrations would not have been granted absent that information.  Id. at ¶ 86-87, 101-103.  The seek a declaratory judgment that the two registrations are invalid, unenforceable and should be cancelled.  The Gush Defendants filed nearly identical counterclaims.  See dkt. # 48, Counterclaims at ¶¶ 50,

25

53-73, 83-84, 98-100.

### b. Analysis of Motion to Dismiss Counterclaims

Counterclaim plaintiffs here seek a declaratory judgment that the copyright

registrations in question are invalid.  Such a showing is important to their defense

against Mackenzie's claims, since an infringement action requires "proving 'ownership

of a valid copyright' and 'copying of constituent elements of the work that are original.'"

Boisson v. Banian, Ltd., 273 F.3d 262, 267 (2d Cir. 2001) (quoting Feist, 499 U.S. at

361).  While "[a] certificate of copyright registration is prima facie evidence of ownership

of a valid copyright, . . . the alleged infringer may rebut that presumption." Scholz

Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012).[5]  The

burden of proving an invalid copyright lies with the party asserting the challenge.  Hamil,

193 F.3d at 98.

Here, Defendants seek to establish that the copyright registrations are invalid.

"Only the 'knowing failure to advise the Copyright Office of facts which might have

occasioned a rejection of the application constitute reason for holding the registration

invalid and thus incapable of supporting an infringement action . . . or denying

---

[5]Defendants argue that the Court should not consider the registrations as prima facie evidence of validity because they were admittedly sought more than five years after "publication" of the material.  See 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court.").  As explained above, the Court will at this point treat the documents registered as unpublished works due to the nature of their creation and use and the allegations made in the Amended Complaint about them.  Thus, the Court will consider the registrations as prima facie evidence of validity for purposes of the instant motion.

enforcement on the grounds of unclean hands[.]'" <u>Eckes v. Card Prices Update</u>, 736 F.2d 859, 861-62 (2d Cir. 1984) (quoting <u>Ross Berrie & Co., Inc. v. Jerry Elsner Co., Inc.</u>, 482 F.Supp. 980, 988 (S.D.N.Y. 1980)). Proving such a claim demands a showing "'(1) that the application for copyright registration is factually inaccurate; (2) that the inaccuracies were willful or deliberate; and (3) that the Copyright Office relied on those misrepresentations.'" <u>Lumetrics, Inc. v. Bristol Instruments, Inc.</u>, 101 F.Supp.3d 264, 268-69 (W.D.N.Y. 2015) (quoting <u>Varisty Brands, Inc. v. J & M Spirit Wear, Inc.</u>, No. 09 Civ. 1795, 2009 U.S. Dist. LEXIS 99198, 2009 WL 34011182, at *2 (S.D.N.Y. Oct. 19, 2009)).

Plaintiff, citing to several cases, argues that Defendants must meet the heightened pleading standard for fraud to successfully plead their claims. Federal Rule of Civil Procedure 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet this standard, a plaintiff must "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" <u>Fin. Guar. ins. Co. v. Putnam Advisory Co., LLC</u>, 783 F.3d 395, 403 (2d Cir. 2015) (quoting <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 187 (2d Cir. 2004)). This pleading standard is a "heightened" one where generalized allegations will not suffice. <u>Spool v. World Child Int'l Adoption Agency</u>, 20 F.3d 178, 184 (2d Cir. 2008). The rule "is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to

'defendants.'" <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) (quoting <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir. 1986)). Even in those areas where particularity is not required, a court "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir. 2006) (quoting <u>Acito v. IMCERA Group, Inc.</u>, 47 F.3d 47, 52 (2d Cir. 1995)). A party may establish this "'strong inference of fraud . . . either by (a) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" <u>Id.</u> at 290-91 (quoting <u>Shields v. Citytrust Bancorp., Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Defendants argue that they have alleged sufficient facts to prevail either on this standard or under the normal 12(b)(6) standard. They offer no detailed argument as to which standard should prevail on such claims. As the Defendants' pleadings are sufficient under either standard, the Court will decline to address the issue at this point. The Court finds that Defendants have alleged specific defects in the applications for registration–specific misstatements about the nature and authorship of the work as well as the originality of the material, and have alleged that such defects were intentional misrepresentations designed to serve the Plaintiff's litigation interests. They have pointed to the name of the person who allegedly made the fraudulent filings, and have identified when and where they were made. Plaintiffs have also alleged why those statements were fraudulent. They have likewise alleged that the Copyright Office would

28

not have issued the registrations if apprised of the true facts behind the application, meeting the pleading standard for invalidating the registrations.  While the Plaintiff correctly points out that the Defendants have conflated the validity of a registration with the underlying question of the validity of a copyright, the Court still finds the allegations sufficient to withstand the Plaintiff's motion with respect to both sets of Counterclaims. The Court will therefore deny the Plaintiffs' motions in this respect.

### ii.  Motion to Strike Affirmative Defenses

Plaintiff also moves to strike any of Defendants' affirmative defenses based on fraud on the Copyright Office.  Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  For the court to strike a defense as insufficient: "'there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by inclusion of the defense.'" Coach, Inc. v. Kmart Corps., 756 F.Supp. 2d 421, 425 (S.D.N.Y. 2010) (quoting Speciality Minerals, Inc. v. Pluess-Stauffer AG, 395 F.Supp.2d 109, 111-112 (S.D.N.Y. 2005)).

Plaintiff offers no argument other than that any affirmative defense must meet the particularized pleading standard of Rule 12(b)(6).  Because the Court has already rejected the Plaintiff's argument in this respect with reference to the counterclaims, the Court will deny the motion in this respect too.

### IV.	CONCLUSION

For the reasons stated above, the Court will grant the Defendants' motions to dismiss in part and deny them in part. The Court will deny the Plaintiff's motion to dismiss Defendants' counterclaims and strike affirmative defenses. The Court will:

1. **DENY** the Design Logic Defendant's motion to dismiss, dkt. # 43;

2. **GRANT** without prejudice the Captain's Lookout Defendant's motion to dismiss, dkt. # 46, with respect to Plaintiff's contract claims and **DENY** the motion in all other respects;

3. **GRANT** without prejudice the Gush Defendant's motion to dismiss, dkt. # 49, with respect to Plaintiff's contract claims and **DENY** the motion in all other respects; and

4. **DENY** the Plaintiff's motion to dismiss Defendants' counterclaims and strike affirmative defenses, dkt. # 59.

The Plaintiff may file an Amended Complaint that addresses the deficiencies in the contract claims within 21 days of the date of this order. Failure to file an Amended Complaint by that date will cause the case to go forward based on the remaining claims in the Amended Complaint.

**IT IS SO ORDERED**

Dated: September 8, 2016


Thomas J. McAvoy
Senior, U.S. District Judge